IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

|   |   |
|---|---|
| AMBERLY JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) CV 3:06CV559-CSC-E |
| WAFFLE HOUSE, INC., | ) |
| Defendant. | ) |

**DEFENDANT WAFFLE HOUSE, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S WANTONNESS CLAIM**

**COMES NOW** Defendant, Waffle House, Inc. ("Defendant" or "WHI"), by and through its undersigned counsel, and submits the following Brief in Support of its Motion for Partial Summary Judgment on Plaintiff's Wantonness Claim:

**INTRODUCTION**

This case concerns alleged minor physical injuries. Plaintiff Amberly Johnson ("Plaintiff") alleges that she was injured while she was a patron at a restaurant owned by WHI. In particular, Plaintiff alleges that her leg was "brushed" by an automobile driven by James Alexander Gresham ("Mr. Gresham") on January 1, 2006, when Mr. Gresham recklessly drove his vehicle into WHI Unit #805 in Opelika, Alabama. Mr. Gresham's car actually popped a concrete barrier between his parking space and the restaurant, then popped the curb and proceeded to smash through the front of the restaurant. The car came to rest after meeting the back wall of the restaurant.

Mr. Gresham, an elderly gentleman, became confused between the vehicle's brake and gas pedals, mistakenly applying the gas when he should have engaged the brake pedal. In fact,

according to an eyewitness, Mr. Gresham's tires remained spinning and smoking after the vehicle came to stop against the rear of building as Mr. Gresham continued to apply the gas.

This incident on January 1, 2006, was the first and only time a vehicle has penetrated an exterior wall of Unit #805 and caused physical injuries. Prior to January 1, 2006, the exterior of Unit #805 had received minor cosmetic damage from vehicle collisions on two other occasions. As such, the January 1, 2006, incident at Unit 805 can only be described as an anomaly, an isolated, "freak" accident.

In this lawsuit, Plaintiff claims she has suffered approximately $1,250.00 in medical expenses related to the incident and further allegedly sustained lost wages of $2,500.00. She makes such claims despite the fact that after the incident, Plaintiff entered into a settlement agreement with Mr. Gresham's (the offending driver's) insurer, State Farm Mutual Automobile Insurance Company, for $12,500.00. Plaintiff now seeks recovery against WHI for some of the exact categories of alleged damages for which she has already been compensated by State Farm.

Following her settlement with Mr. Gresham, on June 22, 2006, Plaintiff sued WHI, alleging that it negligently and/or wantonly failed to provide adequate protection from vehicular traffic in its restaurant. As shown in more detail below, Plaintiff's claim for wantonness is due to be dismissed because Plaintiff cannot provide substantial evidence which would create a factual dispute regarding this claim. Indeed, the incident occurring on January 1, 2006, was unprecedented. WHI Unit #805 had never experienced a vehicle's intrusion into the body of the restaurant and certainly never encountered such a situation resulting in physical injuries to anyone inside the restaurant. As such, the Plaintiff's claim for wantonness is due to be dismissed.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

1. On January 1, 2006, Plaintiff alleges she and her boyfriend drove to WHI Unit #805 in Opelika, Alabama, to place a to-go order. (See Tab 3, Amberly Johnson deposition, p. 20, lines 18-23, p.21, lines 1-16). Plaintiff had eaten at Unit #805 a number of times prior to that date. (Id. at p. 22, lines 15-20).

2. Upon entering the restaurant, Plaintiff paid for her order and she and her boyfriend, William Dowdell ("Mr. Dowdell"), waited at the high counter of the restaurant on their meals. (Id. at p. 21, lines 2-16, p. 22, lines 3-9, p. 26, lines 15-23, p. 27, lines 1 - 3).

3. Shortly after she paid for her meal, a vehicle driven by Mr. Gresham collided with front the restaurant and penetrated the exterior wall. The car came to rest once it struck the counter inside the restaurant. As aptly described by Plaintiff, Mr. Gresham is an "elderly man" who traveled with a wheelchair lift on the rear of his vehicle. (Id. at p. 26, lines 19-23, p. 27, lines 1-3, 17-23, p. 28 line 1).

4. Mr. Gresham became confused between the vehicle's brake and gas pedals, mistakenly applying the gas when he should have engaged the brake pedal. (See Tab 1, Alabama Uniform Traffic Accident Report). Mr. Gresham's car popped a concrete barrier between his parking space and the restaurant, then popped the curb and proceeded to smash through the front of the restaurant. (Id.; Tab 6, Tom Carlson deposition, p. 39, lines 10-14; Tab 7, Pictures of Accident Scene).

5. As Mr. Gresham's vehicle entered the restaurant, the passenger side of the car "brushed" Plaintiff's leg. Plaintiff admits the vehicle did not "smash" her leg, rather it only "brushed" her leg. (See Tab 3, Amberly Johnson deposition, p. 30, lines 15-23, p. 31, lines 1-2).

Plaintiff claims the resulting damage from the "brushing" was "bruising" to her leg. (Id. at. p. 31, lines 13-19, p. 32, lines 10-15).

6. According to an eyewitness, Mr. Gresham's tires remained spinning and smoking after the vehicle came to stop against the rear of building as Mr. Gresham continued to apply the gas. (See Tab 2, Anthony Woodham deposition, p. 17, lines 14-17).

7. Plaintiff was the only person injured as a result of the incident. No other personal injuries were sustained by patrons or WHI employees. (See Tab 3, Amberly Johnson deposition, p. 47, lines 18-20).

8. Immediately following the vehicle's intrusion into the restaurant, an ambulance was called. Upon its arrival, Plaintiff refused treatment by the paramedics and refused to be taken to the hospital in the ambulance, opting instead for her boyfriend to drive her to the hospital. (Id. at. p. 47, lines 1-9, p. 48, lines 15-23). When she arrived at the hospital, Plaintiff was evaluated and released a short time later. (Id. at. p. 52, lines 9-23, p. 53, lines 1-9).

9. After leaving the hospital, Plaintiff and Mr. Dowdell traveled to another WHI restaurant and requested the meals they had ordered at Unit #805 a few hours earlier. They received the food and traveled to Plaintiff's residence where the two consumed the meals. (Id. at p. 54, lines 12-23, p. 55, lines 1-23, p. 56, lines 1 -11).

10. A short time after the incident, Plaintiff made a claim against Mr. Gresham through his liability insurer, State Farm. Plaintiff's claims against Mr. Gresham were settled, pre-suit, for $12,500.00. (Id. at p. 80, lines 15-23, p.81, lines 1-19).

11. After accepting the settlement payment and executing a release in favor of Mr. Gresham, Plaintiff sued WHI, alleging that it negligently and/or wantonly failed to provide adequate protection from vehicular traffic in its restaurant. (See Complaint at ¶ 5).

12. However, as demonstrated by the Declaration of WHI employee and Division Manager Tom Carlson, prior to January 1, 2006, Unit #805 had never encountered a situation wherein a vehicle had collided with an exterior wall of the restaurant and actually penetrated the building. (See Tab 4, Carlson Declaration).

13. As a Division Manager, Mr. Carlson supervises managers of a number of WHI restaurants. Included in those restaurants is WHI Unit #805. Unit #805 has been a part of Mr. Carlson's management territory for eleven (11) years. (Id. at ¶ 3).

14. While he was not present at Unit #805 at the time of incident in question, Mr. Carlson is aware of the January 1, 2006, incident involving Mr. Gresham's vehicle and the allegedly minor physical injuries to Plaintiff. (Id. at ¶ 4).

15. Prior to the January 1, 2006, incident involving Plaintiff, Mr. Carlson is not aware of any occasion wherein a vehicle penetrated an exterior wall of Unit #805. (Id. at ¶ 5).[1]

16. Mr. Carlson is aware of two occasions wherein vehicles have struck the exterior of Unit #805; however, on neither of those two occasions did the offending vehicle penetrate the exterior walls of the restaurant. Further, neither of these two incidents resulted in any physical injuries to patrons or employees, whether inside or outside the restaurant. (Id. at ¶ 6).

17. The first collision Mr. Carlson is aware of occurred in 2004. On that occasion, a customer mistakenly left her car running when she entered the restaurant to receive a to-go order. The car remained in gear, jumped over the concrete barrier between the restaurant and the parking space, popped the sidewalk curb and bumped into the restaurant. The car did not

---

[1] As Division Manager, Mr. Carlson has no "office" as he is constantly working in the restaurants that he supervises. He would be made aware of any vehicle strike incident occurring at his restaurants that causes any property damage or personal injury. Similarly, no structural repairs take place at his restaurants of which he is unaware. (Id. at ¶ 9).

penetrate the exterior wall of restaurant. No patrons or employees inside or outside the restaurant were harmed. A portion of the exterior wall required superficial repair after this incident. (Id. at ¶ 7).

18.     On the second occasion, which Mr. Carlson believes occurred in 2001, a large medical transportation truck was backing into a parking space and struck the awning of the restaurant due to the excessive height of the vehicle. As a result of the incident, a portion of the awning needed repair and the canopy covering the awning was replaced. No patrons or employees inside or outside the restaurant were harmed. (Id. at ¶ 8).

19.     Interestingly, Mr. Dowdell, Plaintiff's now former boyfriend, contends Plaintiff has no continuing physical aliments resulting from the incident and further believes she has already been compensated for her alleged injuries through her settlement with Mr. Gresham's liability carrier. (See Tab 5, William Dowdell deposition, p. 60, lines 7-23, p. 61, lines 1-3).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986); Shalimar Contractors, Inc. v. American States Ins. Co., 975 F. Supp. 1450 (M.D. Ala. 1997). The court must construe the evidence and factual inferences in the light most favorable to the non-moving party. Givahn v. Electronic Engineers, Inc., 4 F. Supp. 2d 1331, 1335 (M.D. Ala. 1998) (citing Adickes. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The party seeking summary judgment has the burden to establish there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. In cases where the non-moving party will bear the burden of proof at trial, the moving party may either

submit affirmative evidence negating an essential element of the non-moving party's claim, or demonstrate that the non-moving party's evidence is insufficient to establish an essential element of his claim. Celotex, 477 U.S. at 322.

When the moving party makes out a prima facie case that no genuine issue of material fact exists, the burden shifts to the non-moving party to rebut the showing by presenting substantial evidence of the existence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Neither unsubstantiated assertions nor conclusory allegations are sufficient to satisfy the non-moving party's burden. Earley v. Champion Int'l Corp., 907 F. 2d 1077, 1081 (11th Cir. 1990); Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987). Courts have defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989); see also United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-moving party must go beyond the pleadings, and by affidavits or other evidence, he must show that there is a genuine issue for trial. Celotex, 477 U.S. at 323; See also FED. R. CIV. P. 56(e). In meeting this burden, the nonmoving party must do more than simply show that there is a metaphysical doubt as to the material facts. The non-moving party must demonstrate there is a genuine issue for trial. Celotex, 477 U.S. at 323.

## ARGUMENT

Plaintiff cannot establish a question of fact on her claim against WHI for wantonness. According to the Alabama Supreme Court, wantonness is defined as the conscious doing of an act or the omission of some duty while knowing of an existing condition and being conscious that by performing an act or omitting an act, injury likely or probably will result. Stone v.

Southland Nat. Ins. Corp., 589 So. 2d 1289, 1212 (Ala. 1991). Wantonness is statutorily defined as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3).

The Alabama Supreme Court has stated that for a party to be found guilty of wantonness, "it must be shown that with reckless indifference to the consequences of his or her action, the party consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omission caused the injury." Kennedy v. Jack Smith Enter., Inc., 619 So. 2d 1326, 1328 (Ala. 1993), citing, Brown v. Turner, 497 So. 2d 1119 (Ala. 1986). Here, the Plaintiff cannot provide substantial evidence of the required degree of consciousness or recklessness, nor the causal connection between the act or omission and the injury.

A clear-cut distinction between negligence and wantonness has been defined in Alabama, emphasizing that wantonness requires "some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission" and "is not to be confused with negligence (i.e. mere inadvertence)":

> "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . .
>
> Negligence is usually characterized as inattention, thoughtless, or heedlessness, a lack of due care . . .[2] 'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the **state of mind** with which the act or omission is done or omitted.'"

---

[2]  Omitted is language stating that "wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act," as this Court overruled such language to the extent it deviates from the statutory definition of wantonness followed by this Court, as it suggested that a "specific design or intent" was an element to a wantonness claim. See Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998).

South Cent. Bell Co. v. Branum, 568 So. 2d 795, 797 (Ala. 1990), citing, Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So. 2d 142 (Ala. 1987); McNeil v. Munson S.S. Lines, 184 Ala. 420, 423, 63 So. 992 (1913) (Emphasis added).

Moreover, in Dooley's Modern Tort Law § 4.22 (1982) at 117, negligence and wantonness are distinguished as follows:

> "Willful and wanton conduct has a well-defined meaning at law. It is sometimes expressed in terms of 'reckless disregard of the safety of another.' Willful and wanton conduct should not be confused with negligence. It has been correctly stated that the two concepts are as '**unmixable as oil and water**.'" (Emphasis added).

Again, in Speiser, Krause, and Cans, 3 The American Law of Torts § 10.1 (1986) at 358, a distinction between negligence and wantonness is discussed as follows:

> ". . . Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term "negligence," which conveys the idea of inadvertence, as distinguished from premeditation or formed intention."

Consequently, the Alabama Supreme Court has recognized that it is an error for a wantonness claim to go to the jury when, as here, the Plaintiff cannot make a substantial showing of the requisite "state of mind". See South Cent. Bell Co., 568 So. 2d at 798; Alfa Mut. Ins. Co., 723 So. 2d at 1257. By simply presenting evidence of an "inadvertent omission of a duty" and a breach in the standard of care, the Plaintiff's claim for wantonness should be dismissed. Indeed, "[t]he 'knowledge' of the defendant is 'the *sine qua non* of wantonness.'" Norris v. City of Montgomery, 821 So. 2d 149, 156 n. 9 (Ala. 2001) (quoting Ricketts v. Norfolk Southern Ry., 686 So. 2d 1100, 1106 (Ala. 1996)).

Here, Plaintiff cannot produce any evidence that WHI acted with a **conscious disregard of the safety of Plaintiff** and **that an injury was likely to result to Plaintiff from said act.** Indeed, the uncontroverted facts of this case demonstrate that Unit #805 had never experienced

9

an incident remotely similar to one occurring on January 1, 2006. At no time during the preceding ten years, the length of time Mr. Carlson had been Division Manager over Unit #805, had a person ever been injured when a vehicle collided with the restaurant. During that same ten year period a vehicle had never penetrated the restaurant, causing injury to any patron or WHI employee.

Having never encountered a similar situation at Unit #805, WHI cannot, as a matter of law, be charged with acting in "conscious disregard" of Plaintiff's safety. Thus, given the undisputed facts, WHI is entitled to judgment as a matter of law on Plaintiff's claim for wantonness.

## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Defendant Waffle House, Inc. respectfully requests this Court to enter summary judgment in its favor as to Plaintiff's claim of wantonness asserted against it.

    Respectfully submitted,

    /s/Robert E. Battle
    Robert E. Battle (ASB-7807-T67R)
    Michael J. Clemmer (ASB-4005-E68M)
    Attorneys for Defendant WAFFLE HOUSE, INC.

**OF COUNSEL:**

**BATTLE FLEENOR GREEN
  WINN & CLEMMER LLP**
The Financial Center
505 North 20th Street
Suite 1150
Birmingham, Alabama 35203
Telephone: (205) 397-8160
Fax: (205) 397-8179
Email: rbattle@bfgwc.com
      mclemmer@bfgwc.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 18, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin H. Parr
INGRUM, RICE & PARR, LLC
410 Second Avenue
Opelika, AL 36801

    And, I hereby certify that I have mailed by United States Postal Service the document to the following non- CM/ECF participants: **None**

                                            /s/ Robert E. Battle
                                            OF COUNSEL